IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,

        v.

                                              26-CV-6009

ONE CUSTOM LIZARD JEWELRY PIECE WITH DIAMONDS;
ONE 30-INCH ROUNDED FRANCO NECKLACE;
ONE DIAMOND RING;
ONE 24-INCH POPCORN CHAIN WITH PENDANT;
ONE 22-INCH CURB LINK 14K GOLD CHAIN WITH PENDANT;
ONE GUCCI WATCH WITH DIAMONDS;
ONE TECHNO-MARINE WATCH;
ONE ROUNDED FRANCO 14K GOLD CHAIN; AND
APPROXIMATELY $3,697.00 U.S. CURRENCY.

                Defendants *in rem.*

_____

## **VERIFIED COMPLAINT FOR FORFEITURE**

The United States of America, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and Mary Clare Kane, Assistant United States Attorney, of counsel for its Verified Complaint for Forfeiture herein alleges as follows:

## **CAUSE OF ACTION**

1.     This is an action *in rem* pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 21, United States Code, Section 881(a)(6) for the forfeiture of One (1) custom lizard jewelry piece with diamonds; One (1) 30-inch Rounded Franco necklace; One

(1) diamond ring; One (1) 24-inch popcorn chain with pendant; One (1) 22-inch curb link 14K gold chain with pendant; One (1) Gucci watch with diamonds; One (1) Techno-Marine watch; One (1) Rounded Franco 14K gold chain (hereinafter the "Defendant Jewelry"); and the approximate sum of $3,697.00 in United States currency (hereinafter the "Defendant Currency") (hereinafter all assets collectively referred to as "Defendant Property") seized in Orlando, Florida in connection with an investigation in the Western District of New York.

2.      This Court has subject matter jurisdiction of this action pursuant to the provisions of Title 28, United States Code, Sections 1345 and 1355(a), and *in rem* jurisdiction pursuant to Title 28, United States Code, Sections 1355(b).

3.      Venue is properly premised in the Western District of New York pursuant to Title 28, United Sates Code, Section 1395 and Title 21, United Sates Code, Section 881(j).

## SUMMARY

4.      On or about July 18, 2025, special agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) from the Orlando (Florida) Group III field office, along with special agents from the Rochester, New York field office, executed a federal search warrant at 6159 Jibway Court, Orlando, Florida.

5.      A federal arrest warrant for the person of Rafael Gilbert Guerrero was also executed on July 18, 2025.

6.      The Defendant Property was seized as a result of the execution of a federal search warrant and the federal arrest warrant for Rafael Gilbert Guerrero.

7.      Defendant Property was furnished, or intended to be furnished, in exchange for a controlled substance, was proceeds traceable to such exchanges of controlled substances,

2

and had otherwise been used, or was intended to be used, to facilitate violations of Title 21, United States Code, Section 841 *et. seq.*, therefore, the Defendant Property is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6). Further, the Defendant Jewelry is property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 21, United States Code, Section 841, *et seq.* and is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

8.     The Defendant Jewelry is more particularly described as:

    a.     One (1) custom lizard jewelry piece with diamonds;

    b.     One (1) 30-inch Rounded Franco necklace;

    c.     One (1) diamond ring;

    d.     One (1) 24-inch popcorn chain with pendant;

    e.     One (1) 22-inch curb link 14K gold chain with pendant;

    f.     One (1) Gucci Watch with diamonds;

    g.     One (1) Techno-Marine watch; and

    h.     One (1) Rounded Franco 14K gold chain.

(*See* Exhibit A, attached hereto, photographs of each piece of Defendant Jewelry, incorporated herein by reference).

9.     The Defendant Property is in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) in the Western District of New York.

10.     Between, on or about July of 2024 and on or about January 29, 2025, five (5) U.S. Priority Mail parcels were intercepted by the United States Postal Inspection Service (USPIS). All the seized parcels were shipped from various locations in Puerto Rico and bore

recipient addresses for Rochester and Irondequoit, New York, in the Western District of New York, as well as Allentown, PA; Lowell, MA; and Roxbury, MA.

11.     The suspected cocaine seized from four of the aforementioned parcels was submitted to the United State Postal Service (USPS) Forensic Laboratory for analysis which confirmed the presence of cocaine hydrochloride in the submitted substances.

12.     The total weight of the seized cocaine was approximately 16,500 grams or 16.5 kilograms.

13.     The United States Postal Service (USPS) Forensic Laboratory was able to obtain latent fingerprints from at least three of the aforesaid parcels. A set of finger and palm prints was determined to belong to Jose M. Santos-Paniagua.

## Identification of Rafael Gilbert Guerrero

14.     The investigation revealed the names and identities of co-conspirators involved in mailing the aforementioned parcels as Jose Manuel Santos-Paniagua a/k/a JM a/k/a Lendy a/k/a L a/k/a La L, Diana Lee Vazquez-Arroyo a/k/a Di, and **RAFAEL GILBERT GUERRERO** a/k/a R a/k/a La R a/k/a Rafi (hereinafter referred to as "**GUERRERO**" the individual from whom the Defendant Property was seized).

15.     Law enforcement officers (hereinafter referred to as "LEO") discovered that **GUERRERO** communicated with his co-conspirators in this drug trafficking organization (DTO)  via  cellular telephones with respect to the DTO's cocaine distribution operations. **GUERRERO**'s communications included identification of names and locations/addresses to which his co-conspirators mailed parcels containing cocaine, and **GUERRERO** was kept apprised of the status of preparation of the shipments and deliveries.

4

### Arrest of Jose Manuel Santos-Paniagua

16.     On February 16, 2025, at approximately 6:00 p.m., Border Patrol Agents (BPAs) in Puerto Rico, participating in a targeted enforcement action, arrested Jose Santos-Paniagua. Pursuant to that arrest, BPA seized a firearm. Santos-Paniagua was secured and detained for further investigation regarding the firearm.

### Search of Santos-Paniagua's cellular phones

17.     Santos-Paniagua was in possession of three (3) cellular phones at the time of his arrest.

18.     On February 26, 2025, a United States Magistrate Judge in the District of Puerto Rico, signed a search and seizure warrant authorizing law enforcement to search the three (3) cellphones recovered from Santos-Paniagua.

19.     LEO reviewed the extractions of the cellphones recovered from Santos-Paniagua. With respect to the cellphone bearing IMEI #352060427839491 and device named "iPhone de Jose" (hereinafter referred to as "iPhone de Jose").

20.     LEO observed the following messages (among others): a WhatsApp conversation with phone number 939-327-5915 stored as a contact in iPhone de Jose as "Rafi Bueno," whom LEO has confirmed is a known alias of **GUERRERO,** which in sum and substance revealed the following:

> On July 19, 2024, at around 12:00 p.m., Santos-Paniagua sent "Rafi Bueno" an audio message stating "Send that thing, bro."

21.     That same day, July 19, 2024, at about 3:25 p.m., a USPS Priority Mail parcel weighing 10 pounds, 8.4 ounces was mailed to "Anthony Velez 42 Kelly Street Rochester NY

14605" from San Juan, Puerto Rico. The weight of this parcel is consistent with the weight of the parcels referenced in ¶¶ 10-13 above.

22.     As part of the joint investigation, LEO learned that a GPS tracking device, 8882323639, associated with one of Santos-Paniagua's iCloud accounts, was activated on July 19, 2024, and it traveled from Puerto Rico to 42 Kelly Street, Rochester, NY, arriving there on July 22, 2024, at about 1:30 p.m. EST.

23.     Thereafter, LEO obtained USPS records that established that the parcel addressed to 42 Kelly Street, Rochester, New York was delivered there on July 22, 2024, at about 1:30 p.m. EST.

### Other Communications between Santos-Paniagua and Guerrero

24.     The following are summaries of a number of communications between Santos-Paniagua and **GUERRERO:**

    a. On September 25, 2024, **GUERRERO** sent a message to Santos-Paniagua and stated, "Brother, send that to me when you can. Early, so I can send it."

    b. After several audio calls that same day, **GUERRERO** sent another message to Santos-Paniagua and stated, "Send when you can" and then sent another message stating "The photo and that." Santos-Paniagua responded and stated, "Um, alright. I'll arrange that soon. Give me a minute. There's a fucking traffic jam. We get traffic jams all over the place here." **GUERRERO** responded by stating "Ok. At this time." Santos-Paniagua responded, "What else is missing brother? I changed the name on that, and – and that. What else is missing?" **GUERRERO** responded, "Ok." Santos-Paniagua responded, "It really, really

6

– the area looks really good. I headed up there and…and you can see mansions around there." **GUERRERO** responded, "alright."

c.  On October 6, 2024, **GUERRERO** sent Santos-Paniagua a message stating "We have to be active tomorrow, supposedly."

d.  On October 7, 2024, **GUERRERO** sent Santos-Paniagua a message stating "They're not the ones that call. But whatever you want, you know." Santos-Paniagua responded and stated "Um, alright. We're set. Regardless, I'll be standing by then." **GUERRERO** responded, "Yes." Santos-Paniagua responded, "Alright."

e.  Later, on October 7, 2024, the two have several audio calls. Then **GUERRERO** messaged Santos-Paniagua and stated, "They said they were delayed. They can move." Then **GUERRERO** messaged Santos-Paniagua and stated, "Have Tego reach out to him about the motorcycle matter."

f.  On October 14, 2024, **GUERRERO** messaged Santos-Paniagua and stated "Contact P to see what Bory said. Because they don't reach out." Santos-Paniagua responded "Um, alright. I'll call him right now. I'll give you an answer. Give me a minute."

g.  On October 16, 2024, **GUERRERO** messaged Santos-Paniagua and stated "What's up? Make the arrangement for the money; four." Santos-Paniagua responded and stated "Alright. We're set. Let me call him so he can go pick it up." **GUERRERO** messaged Santos-Paniagua two hours later and stated, "What's up? Did you take care of it? Have you called this man?" These messages were followed up by various audio and video calls.

7

h.  On October 18, 2024, **GUERRERO** messaged Santos-Paniagua and stated "The guy is going to contact you." Santos-Paniagua responded and stated, "He already called me. He'll be ready in half an hour. You know it." **GUERRERO** responded, "All good." These messages were followed by various audio and video calls.

i.  On October 21, 2024, **GUERRERO** messaged Santos-Paniagua and stated "What do the ones form the exchange say?" This was followed by several audio calls. Then **GUERRERO** messaged Santos-Paniagua and stated, "The number." Santos-Paniagua responded and stated "No, I really don't have it. Call Carlos to send it to you." Later that same day, **GUERRERO** messaged Santos-Paniagua with a picture of a cell phone screen depicting a WhatsApp phone number (407-955-3701) and stated, "Have Ale call me at this one. I forgot my other cell phone." Santos-Paniagua responded "Alright." Later, on October 21, 2024, Santos-Paniagua messaged **GUERRERO** and stated, "That's the addy [address]." **GUERRERO** responded, "Yes." Santos-Paniagua responded, "Um, alright. We're all set, brother. Alright." **GUERRERO** responded, "Like that, like the instructions say."

j.  On October 22, 2024, **GUERRERO** messaged Santos-Paniagua and stated, "Are the people on their way?" Santos-Paniagua responded and stated, "Um. Yes. The guy called me a little while ago…about 15 or 20 minutes ago, when I was leaving." **GUERRERO** responded, "All set."

k.  On October 23, 2024, Santos-Paniagua sent **GUERRERO** a screenshot of a calculator showing a value of 51,300. That message was immediately followed by a 4-minute audio call.

l.  On November 4, 2024, **GUERRERO** messaged Santos-Paniagua and stated, "Brother, send it so they can forward that today." Santos-Paniagua responded and stated "Alright. It's done. It's done. I spoke with her. The thing is that I was doing some stuff last night. However, she's in Condado today. Mm… I'm going up there right now. When I get up there, I'm going to drop off her thing. Alright. So then, call Alex so that he can then send the money for [unintelligible]." **GUERRERO** responded, "Alright."

m.  On November 12, 2024, at around 1:35 a.m., **GUERRERO** messaged Santos-Paniagua about being on a flight that is delayed. The messages that follow established that the two are planning to meet up in the Dominican Republic.

n.  On December 7, 2024, **GUERRERO** messaged Santos-Paniagua and stated, "I'm with Diana."[1] This was followed by various audio calls.[2]

o.  On December 9, 2024, **GUERRERO** messaged Santos-Paniagua and stated, "Chulo, call Danny really quick and tell him to start heading down, please.

---

[1]This is consistent with the timeframe when the contact stored as "Di" who picks back up working for the conspiracy. LEO's review of the communications involving "Di" noticed a break in her text communication with Santos-Paniagua between March 2024 and December 2024. Three days after this December 7 message where GUERRERO tells Santos-Paniagua that he is with Diana, the contact stored as "Di" is back in contact with Santos-Paniagua sending packages for him.

[2] LEO confirmed that "Diana" is Diana Lee Vazquez-Arroyo a/k/a "Di".

Have him go over to Carlos' place quickly, because I'm leaving my house now.

Please." This was followed by various audio and video calls.

p.  On December 10, 2024, "Di" sent a package for Santos-Paniagua. She sent a

photograph of the receipt to Santos-Paniagua at 4:13 p.m. Six minutes later, at

4:19 PM, **GUERRERO** called Santos-Paniagua on WhatsApp, and they had a

3-and-a-half-minute conversation.

### Guerrero's Involvement in Directing Parcels of Cocaine to Massachusetts

25.    LEO discovered messaging activity between **GUERRERO**, Santa-Paniagua

and "Di" between December 2024 and February 2025, and based on the content of the

communications and LEO's involvement in this investigation, **GUERRERO**, Santa-

Paniagua and "Di" were coordinating the sending of USPS parcels containing cocaine from

Puerto Rico to addresses in the Commonwealth of Massachusetts. Essentially, **GUERRERO**

provided addresses to which the cocaine was to be mailed, and "Di" confirmed that the

parcels were labelled and mailed to the given addresses. They communicated about "Di's"

availability to perform the mailings in Puerto Rico to the given street addresses. They kept in

contact with each other about the mailings of the parcels containing cocaine.

26.     There are numerous communications between **GUERRERO**, Santos-

Paniagua and "Di" regarding the mailings of cocaine from Puerto Rico to Massachusetts. A

few of them are set forth below.

27.    On December 13, 2024, at 1 p.m., **GUERRERO** sent Santos-Paniagua a

picture of a USPS Priority Mail parcel addressed to 32 Centennial Ave, Apt. 1, Revere, MA

02151. Santos-Paniagua responded, "Alright." Earlier that same day, Santos-Paniagua had messaged "Di" and asked her "Can you do it today?" She responded, "Yes." At 1:38 p.m., about 38 minutes after **GUERRERO** sent a picture of the address to Santos-Paniagua, "Di" sends Santos-Paniagua a picture of a different USPS Priority Mail parcel with a handwritten label also addressed to 32 Centennial Ave, Apt. 1, Revere MA 02151. One minute later, Santos-Paniagua forwarded a message to **GUERRERO** (the attachment is deleted, but LEO believes, based upon the context of this message and other messages, that it was Santos-Paniagua forwarding the picture he had just received from "Di" to **GUERRERO**). At 1:48 p.m., **GUERRERO** responded to Santos-Paniagua and stated, "Ok." At 1:55 p.m., "Di" sent Santos-Paniagua a picture of a receipt showing that she had mailed that parcel to Revere, MA.

28.    On January 21, 2025, six minutes after a parcel containing cocaine was delivered to Lynn, MA,[3] **GUERRERO** called Santos-Paniagua, and they had a 25-minute conversation. Later in the evening of January 21, 2025, **GUERRERO** sent Santos-Paniagua a screenshot of a calculator showing the number 5,975 with the caption "me debe ahora" or "owes me now".

29.    On February 1, 2025, at 5:44 a.m., **GUERRERO** messaged Santos-Paniagua and sent the name Beltre Santana and the address 252 Jefferson Ave Apt- Salem, MA 01970. Then **GUERRERO** told Santos-Paniagua to "Call Tego about the apartment number. That's the only thing missing. I don't remember if he said that it was Apt 1 or Apt 2." At 10:36 a.m.,

---

[3] GPS records from USPS indicate that a parcel was delivered to 437 Western Ave, Lynn, MA on 1/21/2025 at 1324 hrs.

Santos-Paniagua messaged "Di" and stated, "Good morning, Diana. Let's see if we can do something today. You let me know." At 10:42 a.m., "Di" responded and stated "Alright, I'm making the kids breakfast, and that's it." Santos-Paniagua then sent "Di" an audio message stating "Hmm, Okay. Then in about 20 I'll hit you up. So that we start moving up, in order to put it in Rio Hondo, or if not, over there by Dorado. Where you put it over there, right there." "Di" responded and stated, "Yesterday I put it in Beralta. We can go to Dorado. I don't have a problem. Uhm, and it's been about three weeks that we haven't, haven't been there, to Dorado."[4]

30.    On February 8, 2025, at 8:38 a.m., "Di" messaged Santos-Paniagua and stated "Good morning! Send me the address." At 8:48 a.m., Santos-Paniagua forwarded a message (based on the other calls/messaging and the context and circumstances of the case, LEO believes the forwarded message from Santos-Paniagua was an address that he had received from **GUERRERO** the day before). At 8:54 a.m., "Di" sent Santos-Paniagua a picture of a USPS Priority Mail parcel addressed to "Beltre Santana at 127 Winnepurkit Ave Lynn MA 01905." At 9:05 a.m., Santos-Paniagua forwarded a message to **GUERRERO** (based on the other calls/messaging and the context and circumstances of the case, LEO believes that Santos-Paniagua forwarded **GUERRERO** the picture that "Di" had just sent him of the parcel). At 9:15 a.m., "Di" sent Santos-Paniagua a photograph of a shipping receipt for a

---

[4]This audio message from "Di" further establishes her knowledge that the parcels contained drugs. She is discussing how she keeps track of which post offices she uses to mail the parcels, so that they don't use the same one too frequently. That is not consistent with normal shipping behavior and establishes her knowledge that she was in a conspiracy to distribute drugs.

USPS parcel to Lynn, MA. Santos-Paniagua responded at 9:25 a.m. stated "Alright, it's done, thank you so much."

31.    Based upon training and experience and their participation in the overall investigation, LEO  believes that the pattern of communications including the ones summarized above, coupled with the interdiction of  Parcel 1, Parcel 2, Parcel 4, Parcel 5, and Parcel 6, establish that **GUERRERO,** "Di" and Santos-Paniagua conspired together and with others to mail/ship controlled substances from Puerto Rico to the Rochester, New York area and other cities throughout the continental United States through the use of the mail/United States Postal Service.

### Review of Diana Lee Vazquez-Arroyo's Cellphone

32.    In May of 2025, pursuant to a search warrant, law enforcement seized the cellphone assigned call number 787-702-3238, which is the same as the phone number stored in iPhone de Jose as contact "Di" who was previously identified as Diana Lee Vazquez-Arroyo.

33.    In "Di's" phone, law enforcement observed the following information:

      i.    A photograph from May 3, 2023, of a USPS Priority Mail box addressed to Buffalo, New York.



34.     USPIS investigation of records related to the Buffalo, New York address depicted on that parcel image above established numerous mailings of other parcels[5] received at that address during the timeframe of the conspiracy.

**Discovery of Guerrero's Contact Information in iPhone de Jose**

35.     Santos-Paniagua communicates via WhatsApp with the number 939-327-5915, stored as "Rafi Bueno" a known alias of **GUERRERO**. The communications seized by law enforcement from iPhone de Jose (Santos-Paniagua's phone) begin on July 7, 2024, and continue until February 15, 2025 (the day before Santos-Paniagua was arrested in Puerto Rico).  That same phone number, ending in 5915, was stored in another of the phones seized from Santos-Paniagua under the contact's name "La R". LEO checked the current phone number that **GUERRERO** provided to the Puerto Rico DMV (see photograph depicted below)

---

[5] This is based upon USPIS criteria including a review of payment method, weight of parcel, location of origin, and other factors commonly observed by the USPIS in parcels containing contraband.

and discovered it to be (787) 342-0779.



36.     When agents searched iPhone de Jose (Santos-Paniagua's phone) to determine

if that phone number was stored as a contact, it was found stored as a prior/alternate phone

number for contact **GUERRERO** (see screenshot depicted below).

37.    LEO also recovered the photograph below from iPhone de Jose which depicts **GUERRERO** together with Santos-Paniagua.



**Additional Evidence from iPhone de Jose**

38.    On February 1, 2025, at 11:41:20 a.m., Santos-Paniagua's phone, iPhone de Jose, was used to take a photograph of two bricks[6] of a compressed, white powder substance, wrapped in clear plastic sitting on a countertop.

---

[6] The same stamp "GR" was observed on the kilograms seized from PARCEL 6 two months earlier in December 2024.



39.     Two seconds later, at 11:41:22 a.m. on February 1, 2025, Santos-Paniagua's phone, iPhone de Jose, was used to take a photograph of a third brick of a compressed, white powdery substance, in a vacuum sealed plastic pouch, sitting in a sink.



40. LEO also observed dozens of "screenshots" captured on iPhone de Jose depicting calculator calculations of five-figure and six-figure sums, which, observed in the context of the other contents of the phone, are consistent with book-keeping or ledger activity associated with large scale, kilogram quantity drug trafficking. One such image (5005.JPG) was captured on December 14, 2024, and is depicted below as an example.



41. LEO also observed a photograph (on February 15, 2025, a photograph (IMG_5654.HEIC)) was taken by iPhone de Jose. It depicted the following ledger:



42.     This ledger was seized from Santos-Paniagua's residence during the execution

of a search warrant in Puerto Rico in May 2025, including the same entry depicted in the

photograph above. During the investigation, it was revealed that "L" is a nickname/alias used by Santos-Paniagua and that "R" is a nickname/alias utilized by **GUERRERO**.

### Search of 6159 Jibway Court, Orlando, Florida

43.     The investigation revealed that **GUERRERO** has several residences in the Puerto Rico, the Dominican Republic, and in the Orlando, Florida areas. LEO identified **GUERRERO's** Orlando residence as 6159 Jibway Court, Orlando, Florida.

44.     On or about July 18, 2025, LEO searched 6159 Jibway Court under the authority of a search warrant. LEO seized paperwork, cell phones, and two pieces of the Defendant Jewelry (the Techno Marine watch and the diamond ring) from Jibway Court.

### Arrest of GUERRERO

45.     On or about July 15, 2025, a United States Magistrate Judge for Western District of New York, issued an arrest warrant for **GUERRERO**, based on a criminal complaint charging **GUERRERO** with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine, in violation 21 U.S.C. Sections 846, 84l(a)(l) and 84l(b)(l)(A).

46.     On July 18, 2025, agents from the Federal Bureau of Investigation (FBI) and the United States Marshalls Service (USMS) were conducting surveillance on 6159 Jibway Drive, Orlando, Florida.

47.     The agents observed **GUERRERO** exit the residence and get into a white Toyota Rav 4 bearing Florida registration number QHI-I64. The agents followed the vehicle until a decision was made to block the vehicle in while it was stopped at a light. **GUERRERO**

was taken into custody without incident. Within the vehicle, in plain view, two cellular devices were located on the front seat which were believed to be **GUERRERO's** as he was the only person in the vehicle.

48.    Upon searching **GUERRERO's** person, the Defendant Currency was seized from his front left pocket, and the remaining pieces of the Defendant Jewelry  (the custom lizard jewelry piece with diamonds; 30-inch Rounded Franco necklace; the 24-inch popcorn chain with pendant, the 22-inch curb link 14K gold chain with pendant; Gucci Watch with diamonds; and the  Rounded Franco 14K gold chain) was seized from **GUERRERO's** person.

### Guerrero's Lack of Employment

49.    Based upon the participation of the investigation set forth above, LEO does not believe that **GUERRERO** is employed.

### Defendant Jewelry Valued

50.    On August 6, 2025, the Defendant Jewelry was valued as set forth below:

    a.  One (1) custom lizard jewelry piece with diamonds valued at $13,500.00;

    b.  One (1) 30-inch Rounded Franco necklace valued at $9,100.00;

    c.  One (1) diamond ring valued at $6,760.00;

    d.  One (1) 24-inch popcorn chain with pendant valued at $5,162.00;

    e.  One (1) 22-inch curb link 14K gold chain with pendant valued at $2,600.00;

    f.  One (1) Gucci Watch with diamonds valued at $2,500.00;

    g.  One (1) Techno-Marine Watch valued at $2,495.00; and

    h.  One (1) Rounded Franco 14K gold chain valued at $2,467.50.

**Total approximate value of all the Defendant Jewelry is $44,584.50**.

## CONCLUSION

Based on all of the foregoing facts, the circumstances surrounding those facts, and the experience and training of the officers and agents involved in the investigation leading to the seizure of the Defendant Property, there is reasonable cause to believe that the Defendant Property was furnished, or intended to be furnished, in exchange for a controlled substance, was proceeds traceable to such exchanges of controlled substances, and had otherwise been used, or was intended to be used, to facilitate violations of Title 21, United States Code, Section 841 *et. seq.*, therefore, the Defendant Property is subject to forfeiture pursuant to Title 21, United States Code, Section 881(a)(6). Further, the Defendant Jewelry is property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 21, United States Code, Section 841, *et seq.* is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

**WHEREFORE**, the United States of America respectfully requests:

(1) that an arrest warrant *in rem* be issued for the arrest of the Defendant Property;

(2) that all persons having any interest therein be cited to appear herein and show cause why the forfeiture should not be decreed;

(3) that a judgment be entered declaring the Defendant Property be condemned and forfeited to the United States of America for disposition in accordance with the law;

(4) that the costs of this suit be paid to and recovered by the United States of America; and

(5) that the Court grant such order and further relief as deemed just and proper.

DATED:  January 5, 2026, at Rochester, New York.

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY:     *s/Mary Clare Kane*

MARY CLARE KANE
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5809
mary.kane@usdoj.gov

## VERIFICATION

**STATE OF NEW YORK** )
**COUNTY OF MONROE** )    **ss.:**
**CITY OF ROCHESTER** )

GREGORY KEHRER, being duly sworn, deposes and says:

I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Rochester, NY, and I am familiar with the facts and circumstances surrounding the seizure of one (1) custom lizard jewelry piece with diamonds, one (1) 30-inch Rounded Franco necklace, one (1) diamond ring, one (1) 24-inch popcorn chain with pendant, one (1) 22-inch curb link 14K gold chain with pendant, one (1) Gucci watch with diamonds, one (1) Techno-Marine watch, one (1) Rounded Franco 14K gold chain, and approximately $3,697.00 United States Currency seized on or about July 18, 2025. The facts alleged in the Complaint for Forfeiture are true to the best of my knowledge and belief and based upon my personal knowledge and information furnished to me by officers and agents of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Rochester, NY and Orlando, Florida, United States Postal Service, Federal Bureau of Investigation (FBI), U.S. Marshalls Service, and Homeland Security Investigations (HSI), provided to officials of the United States Department of Justice.

Subscribed and sworn
before me this day of
January 5, 2026.

s/ _(signature)_

STEPHANIE CHAPMAN
Notary Public, State of New York
Qualified in Monroe County
Reg No. 01CH6446283
My Commission Expires:
January 17, 2027

s/ _(signature)_
Gregory Kehrer
Task Force Officer
Bureau of Alcohol, Tobacco,
*Firearms and Explosives*

STEPHANIE CHAPMAN
Notary Public, State of New York
Qualified in Monroe County
Reg. No. 01CH6446283
Commission Expires January 17, 2027

25